## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

BRENTREZ JARMYKUS          )
MCPHERSON,                 )
                           )
    Plaintiff,         )
                           )
v.                         )          CV621-028
                           )
BRIAN DENNIS ADAMS, *et al.,* )
                           )
    Defendants.        )

## <u>ORDER</u>

*Pro* se prisoner Brentrez Jarmykus McPherson has filed this case alleging that various employees at Smith State Prison were deliberately indifferent to the risk posed by COVID-19.  *See generally* doc. 14.  The Court granted him leave to pursue his case *in forma pauperis*, doc. 6, and he has returned the required forms, docs. 9 & 10.  The Court, therefore, proceeds to screen his Amended Complaint.  *See* 28 U.S.C. § 1915A.  Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff.  *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As McPherson is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

McPherson alleges numerous constitutional violations. First, he alleges that several defendants were deliberately indifferent to the serious risk posed by COVID-19 when they failed to wear face masks. *See* doc. 14 at 9. Defendant Register was deliberately indifferent, apparently to the risk of COVID, "by conducting an unsafe no-touch thermometer temperature check." *Id*. at 10. Defendant Brown did "not allow[ him] to file an Emergency Grievance that involved [him] being exposed to substantial risks of serious harm by staff members." *Id*. at 11. Defendant Osborn retaliated against hm for filing a grievance. *Id*. at 12-13. He seeks monetary damages, declarative and injunctive relief, and "all defendants jobs terminated and banishment of any employment by the Dept. of Corrections or jail facilities." *Id*. at 14.

Before considering the substance of McPherson's claims, the Court notes that he has filed a "Motion to Dismiss Claims against Certain

2

Defendants." Doc. 18. Specifically, he states that he seeks "to voluntarily dismiss any and all claims pertaining to Defendant(s)—MacFarland/MacFarlane, Brian Dennis Adams, Barnes, Wright, Conaway, Shuemake[,] and Lambert only." Doc. 18 at 1. Since, as discussed below, McPherson's Amended Complaint fails to state a claim upon which relief can be granted, he must submit a Second Amended Complaint. As that Second Amended Complaint will supersede all prior pleadings, he is free to omit the identified defendants from that pleading, and they will be, effectively, dismissed. Accordingly, his request to voluntarily dismiss those defendants is **DISMISSED** as moot. Doc. 18.

The United States Supreme Court has explained that, although the pleading standard under the Federal Rules of Civil Procedure, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). The Court emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Characterizations of a defendant's

3

conduct as unlawful are " 'legal conclusion[s]' and, as such, . . . not entitled to the assumption of truth." *Id.* at 680 (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007)).

McPherson's Amended Complaint is a perfect example of the defective pleading prohibited by *Iqbal*.  To the extent that it alleges "facts" at all, it alleges them through a lens of wholly-conclusory legal descriptions.  For example, his allegation against defendant Register is little more than a collection of legal "buzzwords," devoid of factual substance.[1]  McPherson alleges that "Register acted with deliberate indifference, callous indifference, and negligence toward the substantial risks of deadly harm that posed an [sic] severe threat towards my health and life by conducting an unsafe no-touch thermometer temperature check on June 1, 2020 . . . ." Doc. 14 at 10.  Nowhere in the litany is there any hint of what made the temperature check "unsafe." *See id.*  Similarly, he alleges defendant Osborne "acted with deliberate indifference and callous indifference to the substantial risks of harm that [he] was being exposed to by staff members.  Osborn was subjectively aware of such

---

[1]  The Court notes that the Amended Complaint includes references to several "Exhibits." *See, e.g.,* doc. 14 at 12.  No exhibits were attached to the Amended Complaint. *See generally id.*

4

exposure, but objectively disregarded such risks of exposure, which resulted in her failing to respond in an objectively reasonable measures [sic], by allowing [him] to grieve these issues." *Id.* at 12.  The allegations in McPherson's Amended Complaint, stripped of their conclusory legal descriptions, amount to no more than "the-defendant-unlawfully-harmed-me-accusation[s]." *Ashcroft*, 556 at 678.

To the extent that there are factual allegations included in McPherson's Amended Complaint, they are not sufficient to state a claim upon which relief may be granted.  He alleges that various defendants did not wear face masks. *See* doc. 14 at 9.  Allegations of "deliberate indifference" to some risk implicate a § 1983 claim.  Specifically, prison officials violate the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (internal quotation and citation omitted).  However, McPherson's general allegation that defendants were not wearing masks is not sufficient to allege a deliberate indifference claim. *Arrington v. Hou*, 2021 WL 4341933, at *2 (C.D. Ill. Sept. 23, 2021) ("Generally, prison officials' failure as to mask wearing and social

distancing do not satisfy the objective component necessary for deliberate indifference."). *See also, e.g., Coates v. Mahoney*, 2022 WL 503775, at *2 (W.D. Wis. Feb. 18, 2022) (plaintiff's allegation that defendant "disregarded" the need for masks was insufficient to state a claim because "he does not allege or suggest that [defendant] made *no* effort to mitigate the risk of coronavirus spread within the jail or provide details about any mitigation efforts that were actually taken."); *Monroe v. Jouliana*, 2021 WL 6052162, at *4 (S.D.N.Y. Dec. 20, 2021) ("[T]he risk of serious harm to plaintiff arising out of the denial of a mask should be considered alongside related conditions and precautions that also affect an inmate's exposure to COVID-19, such as social distancing, cleaning supplies, ventilation, among other conditions."); *Pike v. Cerliano*, 2021 WL 3704377, at *3 (E.D. Tx. Aug. 3, 2021) (rejecting § 1983 claim based on allegation that "[j]ail officials surely know about the COVID-19 pandemic but failed to protect [plaintiff's] health and safety" by failing to wear face masks).

His allegations that he was not allowed to file grievances about various issues do not even implicate a constitutional claim. There is no constitutional right to jail grievance procedures, so any procedural

problems arising from their processing cannot support a § 1983 claim. *See Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005); *see also, e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). His allegation concerning "retaliation" for filing grievances is entirely conclusory.[2] To the extent that he intended his allegations about misconduct related to the grievance procedure to state separate claims, such claims fail.

Despite the defects in McPherson's Amended Complaint, a *pro se* plaintiff is typically granted at least one opportunity to amend. *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n.1 (11th Cir. 2002) (en

---

[2] As the Eleventh Circuit has explained: " 'First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment.'" *Stallworth v. Wilkins*, 802 F. App'x 435, 440 (11th Cir. 2020) (quoting *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)). "To prevail on a retaliation claim, the inmate must establish that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [ . . .] and the protected speech [ . . .]." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (internal quotation marks, alterations, and citation omitted).

banc)) ("[W]hen a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."); *see also* Fed. R. Civ. P. 15(a)(2) (courts should grant leave to amend "freely . . . when justice so requires").  That is the case here.

McPherson is **DIRECTED** to file a Second Amended Complaint no later than fourteen days from the date of this Order.[3]  He is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself.  *See Malowney v. Dec. Collection Deposit Grp.*, 193 F.3d 1342, 1345, 1345 n. 1 (11th Cir. 1999); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982).  Failure to timely file his Amended Complaint will result in a recommendation of dismissal for failure to obey a court order or failure to prosecute.  *See* Fed. R. Civ. P. 41(b).

Finally, the Court must assess McPherson's filing fee.  *See* 28 U.S.C. § 1915(b).  Plaintiff's prisoner trust fund account statement reflects $141.79 in average monthly deposits and balance.  Doc. 10 at 1.

---

[3]  The Clerk of Court is **DIRECTED** to provide plaintiff with a copy of the standard prisoner complaint form for violation of civil rights, (Pro Se 14).

Based upon his furnished information, he owes a $28.36 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Furthermore, the custodian also shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED,** this 12th day of May, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA